UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAREN MARIE ISAACSON, <br><br> Plaintiff, <br> v. <br><br> SECRETARY OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendant. | CASE NO. C16-1254JLR <br><br> ORDER GRANTING MOTION TO DISMISS |

## I.  INTRODUCTION

Before the court is Defendant Secretary of Housing and Urban Development's ("the Secretary") motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  (Mot. (Dkt. # 23).)  Plaintiff Karen Marie Isaacson, who is proceeding *pro se* and *in forma pauperis*, opposes the Secretary's motion.  (Resp. (Dkt. # 24).)  The court has considered the parties' briefing, the relevant portions of the record, and the applicable

//

law. Considering itself fully advised,[1] the court DISMISSES this case without prejudice for lack of subject matter jurisdiction.

## II. BACKGROUND

Ms. Isaacson challenges as unconstitutional two mortgage insurance-related provisions promulgated by the Department of Housing and Urban Development ("HUD"): (1) the regulation codified at 24 C.F.R. § 203.43f(d)(iii) ("the Regulation"), and (2) the rule memorialized in HUD Handbook 4235.1 REV-1 § 3-4(B)(4) ("the Rule"). (*See generally* Compl. (Dkt. # 4).) The Rule and the Regulation govern which manufactured homes are eligible for mortgage insurance on home equity conversion mortgages ("HECM"), more commonly known as reverse mortgages. *See* HUD Handbook 4235.1 REV-1 § 1-3(A), *available at* https://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh/4235.1 (last visited Apr. 13, 2017). Ms. Isaacson contends that the Rule and the Regulation violate the Fifth Amendment by making her manufactured home ineligible for a reverse mortgage. (Compl. ¶¶ 4.01-.12.)

**A.    Statutory, Regulatory, and Rulemaking Framework**

Section 255 of the National Housing Act ("NHA") authorizes the Secretary to "carry out a program of mortgage insurance" that facilitates the reverse mortgage market. 12 U.S.C. § 1715z-20(a). The reverse mortgage market "permit[s] the conversion of a portion of accumulated home equity into liquid assets" for "elderly homeowners." *Id.*

---

[1] Neither party requested oral argument, and the court determines it would not be helpful to its disposition of the motion to dismiss. *See* Local Rules W.D. Wash. LCR 7(b)(4).

§ 1715z-20(a)(1); *see also id.* § 1715z-20(b)(1) (defining "elderly homeowner"). Although the NHA contains multiple insurance eligibility restrictions, *see id.* § 1715z-20(d)(1)-(2)(C), it also expressly leaves the prescription of additional eligibility requirements to the Secretary's discretion, *id.* § 1715z-20(d)(2)(D).

Pursuant to this statutory authority, the Secretary has implemented a series of insurance eligibility rules and regulations, including the Rule and the Regulation at issue here. The Regulation is a subsection of 24 C.F.R. § 203.43f, which regulates what types of manufactured homes are eligible for mortgage insurance. *See* 24 C.F.R. § 203.43f. To be eligible for mortgage insurance, the Regulation requires that a manufactured home "have been occupied only at the location subject to the mortgage sought to be insured." 24 C.F.R. § 203.43f(d)(iii). The Regulation has been in place since 1983. *See* Eligibility of Manufactured Homes for Mortgage Insurance, 48 Fed. Reg. 7731-01 (Feb. 24, 1983).

HUD Handbook 4235.1 REV-1 ("the Handbook") extends the availability of federal mortgage insurance to reverse mortgages on manufactured homes. *See generally* HUD Handbook 4235.1 REV-1. Section 3-4 of the Handbook limits the types of manufactured home that are eligible for reverse-mortgage insurance. *Id.* § 3-4. Many of the constraints the Handbook imposes are similar to the mortgage insurance eligibility requirements found in 24 C.F.R. § 203.43f. *Id.* The Rule, which is a subsection of Section 3-4, renders ineligible for mortgage insurance any reverse mortgage on a manufactured unit that was "installed or occupied previously at any other site or location." *Id.* § 3-4(B)(4). The Rule has been in place since 1994. *See id.* at "Transmittal" (indicating the Rule issued on November 18, 1994).

**B.     Ms. Isaacson's Allegations**

In May 2016, Ms. Isaacson visited Guild Mortgage to "begin the process of applying" for a reverse mortgage. (Compl. ¶ 3.01.) When Ms. Isaacson mentioned that she had previously relocated her manufactured home, Guild Mortgage's loan officer informed Ms. Isaacson that the Rule precludes reverse mortgages on relocated manufactured homes. (*Id.* ¶ 3.02.) The loan officer emailed Ms. Isaacson an archived version of the Handbook, and Ms. Isaacson independently confirmed that the current version of the Handbook precludes a reverse mortgage on a relocated manufactured home.[2] (*Id.* ¶ 3.03.)

Ms. Isaacson then contacted several departments of HUD to seek clarification or waiver of the Rule. (*Id.* ¶ 3.04, Ex. 1.) Eventually, a HUD employee responded that to be eligible for mortgage insurance, "the manufactured unit must not have been previously installed or occupied at any other site or location." (*Id.* ¶ 3.04, Ex. 4 at 1.) He also confirmed that there is no exception to the Rule. (*Id.*) In response to Ms. Isaacson's request that HUD provide authority for the Rule, the HUD employee attached a copy of the Handbook. (*Id.* ¶ 3.04.)

Ms. Isaacson asserts that the Secretary has prohibited movement of manufactured homes (*id.* ¶¶ 3.12-.14), exceeded his legislative authority (*id.* ¶¶ 3.16-.20), placed the Regulation and the Rule in difficult-to-locate sources (*id.* ¶ 3.21), forced third parties to

---

[2] Ms. Isaacson appears to be under the mistaken impression that the Rule and the Regulation govern a home's eligibility for a reverse mortgage, as opposed to the home's eligibility for mortgage insurance. (*Compare* Compl. ¶¶ 3.02-.05, *with* 24 C.F.R. § 203.43f, *and* HUD Handbook 4235.1 REV-1.

ORDER - 4

convey bad news (*id.* ¶ 3.22), and misled various parties into believing the Regulation and the Rule are validly promulgated (*id.* ¶¶ 3.23-.29). She contends that the Secretary has thereby violated the Fifth Amendment's due process clause, including its equal protection component, and the Fifth Amendment's takings clause. (*Id.* ¶¶ 4.01-.12.)

**C.     The Secretary's Motion to Dismiss**

The Secretary moves to dismiss Ms. Isaacson's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See generally* Mot.) First, the Secretary argues that Ms. Isaacson lacks Article III standing and that the court therefore lacks subject matter jurisdiction over this action. (*Id.* at 4-7 (citing Fed. R. Civ. P. 12(b)(1)).) Second, the Secretary contends that Ms. Isaacson fails to state a claim. (*Id.* at 7-11 (citing Fed. R. Civ. P. 12(b)(6)).) The court now turns to the Secretary's motion.

### III.     ANALYSIS

Ms. Isaacson's standing is a jurisdictional prerequisite to assessing the merits of this matter, and the court accordingly addresses that issue first. Because the court concludes that Ms. Isaacson lacks standing, the court declines to analyze whether Ms. Isaacson has stated a claim. *See* Fed. R. Civ. P. 12(b)(6).

**A.     Legal Standard**

The Secretary's argument regarding Ms. Isaacson's Article III standing implicates the court's subject matter jurisdiction.[3] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555,

---

[3] "Standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement" and therefore implicates the court's subject matter jurisdiction, "and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11

560 (1992); *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 974 (9th Cir. 2009). A challenge to subject matter jurisdiction is either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the Secretary brings a facial attack on subject matter jurisdiction, in which "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court accepts the factual allegations in the complaint as true, and the nonmoving party is entitled to have those facts construed in the light most favorable to it. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). The party asserting its claims in federal court bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Although "the allegations of [a *pro se* plaintiff's] complaint, 'however inartfully pleaded' are held 'to less stringent standards than normal pleadings drafted by lawyers,'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), this does not preclude dismissal where "a liberal construction does not remedy the palpable deficiencies in [the] complaint," *Wallmuller v. Russell*, No. C14-5121RBL-JRC, 2014 WL 2475978, at *2 (W.D. Wash. June 3, 2014).

**B.      Standing**

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1147

---

(2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The Secretary raises only Article III standing. (*See* Mot. at 4-7.)

(2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). More concisely, these requirements are known as injury, causation, and redressability. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 540 (2007) (Roberts, C.J., dissenting).

Ms. Isaacson's complaint and briefing demonstrate that she lacks standing because she has not alleged a legally cognizable injury that is fairly traceable to the Regulation or the Rule. *Clapper*, 133 S. Ct. at 1147. The injuries she identifies are a diminished home value, difficulty selling her property, and the inability to acquire a reverse mortgage. (Compl. ¶¶ 4.05-.07.) Ms. Isaacson alleges that she has "beg[un] the process of applying for a reverse mortgage" through Guild Mortgage. (*Id.* ¶ 3.01.) However, Ms. Isaacson concedes that even if the Rule and the Regulation did not exist, she is not otherwise eligible for a reverse mortgage. (*Id.* ¶ 3.09 ("Plaintiff's property and manufactured home . . . meet the requirements of the section with the exception of the title requirement due to a current lack of funds to pay for its elimination . . . ."); *see also* Resp. at 4 (conceding that Ms. Isaacson "did not know of th[e title elimination] requirement in advance" and contending that "[t]itle elimination is merely a paperwork issue and is easily resolved").) Regardless of how "easily resolved" the defects in Ms. Isaacson's unfiled reverse mortgage application may be (Resp. at 4), those defects conclusively demonstrate that Ms. Isaacson's alleged injuries are not fairly traceable to the Regulation or the Rule, *see Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th Cir. 2001).[4]

---

[4] For the same reason, Ms. Isaacson fails to adequately allege injury and redressability. *See Clapper*, 133 S. Ct. at 1147. Ms. Isaacson does not face an imminent injury because she is not otherwise eligible for a reverse mortgage, and a favorable ruling from the court would not

Even ignoring this conceded and fatal defect, causation is lacking because all of the injuries that Ms. Isaacson alleges result from the independent choices of third parties. HUD offers optional insurance to certain reverse mortgage lenders. 12 U.S.C. § 1715z-20(a), (c). The reverse mortgage itself, however, comprises a private contract between the homeowner and a private lender. *See Santos v. Reverse Mortg. Sols., Inc.*, No. 12-3296-SC, 2013 WL 5568384, at *4 (N.D. Cal. Oct. 9, 2013). In the only effort to obtain a reverse mortgage that Ms. Isaacson alleges, Guild Mortgage indicated that it would not offer Ms. Isaacson a reverse mortgage because the Rule and the Regulation made her manufactured home ineligible for mortgage insurance. (Compl. ¶ 3.03.) Even assuming other reverse mortgage lenders would take Guild Mortgage's tack, those independent decisions of numerous third parties render the causal link too weak to support standing at this stage. *See Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011)). Accordingly, the court concludes that Ms. Isaacson lacks constitutional standing[5] and dismisses her case for lack of subject matter jurisdiction.

---

redress Ms. Isaacson's alleged injuries because she would remain concededly ineligible for a reverse mortgage.

[5] One could also view the defect in Ms. Isaacson's complaint as a ripeness issue. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)). "Ripeness and standing are closely related because they 'originate from the same Article III limitation.'" *Mont. Envtl. Info. Ctr v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, --- U.S. ---, 134 S. Ct. 2334, 2341 (2014)); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("[B]ecause the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline."). Regardless of which lens the court

C.  **Leave to Amend**

When a court dismisses a *pro se* plaintiff's complaint, leave to amend is mandatory unless it is absolutely clear that amendment could not cure the defects in the complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Typically, this liberal standard warrants at least one opportunity for a *pro se* plaintiff to amend the complaint in response to pleading deficiencies that the court identifies. *See Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). Here, however, Ms. Isaacson conceded that the Rule and the Regulation have not yet caused her any harm (*see* Compl. ¶ 3.09, Resp. at 4)—or, conceptualized differently, that her claim is unripe, *see supra* n.5. These concessions make it absolutely clear that amendment could not cure the court's lack of subject matter jurisdiction. *See Lucas*, 66 F.3d at 248. Accordingly, the court declines to grant Ms. Isaacson leave to amend.

## IV.  CONCLUSION

Based on the foregoing analysis, the court GRANTS the Secretary's motion to dismiss (Dkt. # 23) and DISMISSES Ms. Isaacson's complaint without prejudice and without leave to amend.

Dated this 14th day of April, 2017.

JAMES L. ROBART
United States District Judge

---

applies to Ms. Isaacson's complaint, Article III's case or controversy requirement precludes the court from adjudicating her claim. *See Texas*, 523 U.S. at 300.